| | |
|---|---|
| COGNITIVE EDGE, )<br>)<br>Plaintiff )<br>)<br>Vs. )<br>)<br>CODE GENESYS, LLC, SPRYNG.IO, LLC, )<br>SPRYNG.IO. ANTHROCOMPLEXITY, LLC, )<br>SPRYNG.IO EU LTD, )<br>)<br>Defendants ) | Docket No. 1:19-cv-12123-IT |

## DEFENDANTS' POSTTRIAL MEMORANDUM OF LAW, PROPOSED FINDINGS OF FACT, AND PROPOSED RULINGS OF LAW

Pursuant to Fed. R. Civ. P. 52, and as a supplement to a trial brief filed previously pursuant to Local Rule 16.5, the defendants Code Genesys, LLC, Spryng.io, LLC, Spryng.io.Anthrocomplexity, LLC, and Spryng.io EU LTD submit this following posttrial brief with proposed findings of fact and rulings of law.

## INTRODUCTION

The matter pending before this court is brought by the plaintiff, Cognitive Edge, asserting a breach of contract, breach of the implied covenant of good faith, alleged violations of G. L. c. 93A, §§2 & 11, as well as alleged violations of 15 U.S.C. §1117 (a), the so-called Lanham Act. The plaintiff alleges that all claims alleged in this pending complaint arise from the same common nucleus of facts namely, the breach of a settlement agreement and such concurrent acts in furtherance of the breach, all of which constitute actionable claims. Thus, the case arises out of the alleged breach of the settlement agreement entered into between the parties on or about October

7, 2019. That settlement grew out of the resolution of prior litigation in the United States Federal District Court, for the District of Massachusetts, in a case referenced as <u>Code Genesys, LLC vs. Cognitive Edge PTE LTD</u>, 1:18-cv-12509-IT.

That prior litigation arose out of the alleged breach of a Memorandum of Understanding dated April 5, 2018 between the defendant in that action, Cognitive Edge PTE LTD, and the defendant, Code Genesys, LLC, the plaintiff in that prior litigation. That litigation revolves around a proposed merger transaction through which the parties intended to create a separate jointly-owned and controlled entity to pursue opportunities related to the cognitive science of organizational sense-making. In furtherance of the transactions contemplated by that Memorandum of Understanding, the parties, while each of them continued to operate separately and remain responsible for their own business and financial affairs prior to closing, began collaborating on various issues. Among those issues of collaboration included designing and developing a proposed "minimal viable product" narrative inquiry software application to be known as MassSense, as well as a prototype for a more sophisticated software application to be marketed under Cognitive Edge's existing "SenseMaker" brand. After Cognitive Edge was asked to make the contributions required of it under that prior memorandum of understanding, cognitive edge terminated the agreement to merge with Code Genesys sometime in early August 2018.

Following Cognitive Edge's termination of that Memorandum of Understanding, Code Genesys LLC undertook to salvage from the remnants of the failed transaction its significant work product that was developed with an eye towards development of a new narrative inquiry

application. Thus, on or about September 2018, Code Genesys LLC began further development towards the software application now known as Spryng.io.

That prior Memorandum of Understanding required that certain dispute resolution processes be adhered to by the parties to that Memorandum of Understanding. Despite the terms of that prior memorandum, Code Genesys LLC was forced to file this prior action in the United States District Court for the District of Massachusetts in December 2018, due to Cognitive Edge's persistent failure and refusal, following its breach of that memorandum, to engage in the mandated dispute resolution process. In late spring of 2019, Cognitive Edge finally answered the complaint.

That prior matter was ordered to trial on or about October 7, 2019. The parties appeared for trial in Courtroom 9 in the United States Federal District Court for the District of Massachusetts. Prior to that appearance, there had been conversations between and among counsel for the respective parties over the course of the weekend preceding October 7. Upon arrival in the Federal Court, there was a preliminary evidentiary hearing conducted following a request by Code Genesys to establish whether a settlement had occurred over the weekend. After taking some evidence, the parties were encouraged to discuss their differences. After a discussion, in lieu of going forward with the trial, the parties entered into a Memorandum of Understanding concerning Litigation Settlement, Licensing and Confidentiality. That memorandum forms the basis of this pending litigation between the parties. The memorandum of understanding entered into on October 7, 2019 provided that the plaintiff, Cognitive Edge discharged "Code Genesys, Spryng.io Anthrocomplexity, LLC, Spryng.io, LLC, Spryng.io EU LTD, ScrumDo, LLC, and Kapital Stew LLC and all of its present and former officers, insurers, directors, shareholders, employees, agents,

attorneys, predecessors, successors, affiliates and assigns (including but not limited to Ajay Reddy and Jack Speranza) from any and all claims or liabilities of any kind" arising out of that settlement.

<u>Factual Background</u>

Cognitive Edge is the owner of a proprietary software product, referred to in this litigation as well as the prior litigation, as" SenseMaker". That software collects and provides analysis relative to certain data selected by a particular user for a particular purpose. It's software is either used by its clients directly with the company, or his license to particular individuals that Cognitive Edge has designated as part of its network of partners and/or professionals.

Code Genesys, and the other defendants, are engaged in the business of providing professional consulting services to organizational clients with respect to software development and modern workflow management processes. Its CEO, Ajay Reddy, is a PhD level computer scientist and software architect with many years of experience developing software and workflow management processes.

The parties had engaged in prior litigation which is referenced above, said litigation having been scheduled for trial on October 7, 2019. The settlement agreement which arose out of that prior litigation is the substance of this pending litigation. The plaintiff asserts that the defendants have violated the terms of that settlement agreement in two very specific ways. First, the plaintiff asserts that the defendants breached the agreement by releasing certain emails to a list of individuals which the plaintiff asserts belong to its worldwide network. Second, the plaintiff asserts

that the defendants breached the settlement agreement by publishing certain information on the Spryng.io website that was only accessible to individuals who chose to click on a link in the email communications to explore further details of the history of the dispute between the parties prior to their resolution. After conversations between the parties relative to that first version published on the website, the plaintiff maintains that a second amended version on the website is, also, a violation of the settlement agreement.

The memorandum of understanding states, in paragraph six under "Public Statement/Non-Disparagement", that the memorandum of understanding is confidential and will not be disclosed to anyone other than financial, tax or legal advisors, and that any of the terms and conditions of this agreement or the substance of the discussions preceding it may not be disclosed unless the parties to the agreement request such a disclosure in writing. In the next sentence, the memorandum of understanding further provides that "Notwithstanding the foregoing, the Parties further agree that the Parties may disclose that this dispute has been resolved without adopting or requiring any further relationship between and among the Parties."

Section 7 of that memorandum of understanding requires that the parties shall "jointly and publicly disclose: "the parties have reached an agreement that resolves the parties' lawsuit.". Lastly, Section 8 of that memorandum of understanding contains the affirmative obligation of the parties to refrain from "defaming or disparaging" any of the parties, their products, services, finances, financial condition, capabilities, or other aspect of their businesses, or any former or existing employees, managers, directors, officers, or agents of, or contracting parties with any of the Parties. These undertakings apply in any medium and by any method to any person or entity

without limitation in time." The terms" defaming or disparaging" are not defined by the memorandum of understanding and thus, the defendants assert that this court must look to the elements of a cause of action for commercial disparagement in order to apply the appropriate law to these terms.

## Findings of fact

1.    In December 2018, the defendant, Code Genesys, LLC filed a complaint in the United States District Court for the District of Massachusetts, bearing docket no. 1:18-CV-12509-IT.

2.    In that prior action, the defendant Code Genesys, as plaintiff, sought to enforce a memorandum of understanding between itself and the plaintiff, then defendant, Cognitive Edge.

3.    On October 7, 2019, the parties appeared for trial.

4.    After a preliminary hearing on the question whether or not a settlement had been arrived at by the parties prior to October 7, and after taking testimony from counsel for the defendant, the court offered the parties the use of the courtroom to reach a settlement agreement.

5.    The parties negotiated and, following those negotiations, a Memorandum of Understanding concerning Litigation Settlement, Licensing and Confidentiality was entered into by the parties.

6.    That Memorandum of Understanding contains language, in ¶ 6 provides, that the memorandum of understanding is confidential and will not be disclosed to anyone other than financial, tax or legal advisors, and that any of the terms and conditions of this agreement or the substance of the discussions preceding it may not be disclosed unless the parties to the agreement request such a disclosure in writing.

7.    A further portion of ¶6 provides, that" Notwithstanding the foregoing, the Parties further agree that the Parties may disclose that this dispute has been resolved without adopting or requiring any further relationship between and among the Parties."

8.    ¶7 of that Memorandum of Understanding requires that the parties shall "jointly and publicly disclose: "the parties have reached an agreement that resolves the parties' lawsuit.".

9.    ¶ 8 of that Memorandum of Understanding contains the affirmative obligation of the parties to refrain from "defaming or disparaging" any of the parties, their products, services, finances, financial condition, capabilities, or other aspect of their businesses, or any former or existing employees, managers, directors, officers, or agents of, or contracting parties with any of the Parties. These undertakings apply in any medium and by any method to any person or entity without limitation in time."

10.    The terms" defaming or disparaging" are not defined by the Memorandum of Understanding.

11.     The plaintiff has not offered the prior settlement agreement into evidence in this trial. Thus, there is no evidence that any particular group of individuals should be considered confidential pursuant to the terms of the Memorandum of Understanding based upon either the prior agreement, or one at issue.

12.     Ajay Reddy is the Chief Executive Officer of all of the named defendants.

13.     During the times relevant to the claims of Cognitive Edge, Jack Speranza was the chief operating officer of the defendants Spryng.io LLC and Spryng. Io Anthrocomplexity LLC.

14.     The Memorandum of Understanding does not provide for any individual claim against Ajay Reddy.

15.     The Memorandum of Understanding does not provide for any individual claim against Jack Speranza.

16.     The plaintiff asserts that the defendants breached the Memorandum of Understanding in two specific ways; first, the defendants breached the agreement by releasing certain emails to a list of individuals which the plaintiff asserts belong to its worldwide network.

17.     The second way that the defendants breached the Memorandum of Understanding was by publishing certain information on the Spryng.io website.

18.     Following a conversation between and among the parties occurring sometime in or around October 10, 2019, a second version of the information was published on the Spryng.io website. The plaintiff maintains that the second version did not rectify the breach.

19.     The plaintiff did not offer any evidence at trial to demonstrate that the list of individuals used by the defendants was confidential or proprietary.

20.     The plaintiff did not offer at trial emails that it alleges were sent to those individuals.

21.     The plaintiff has not demonstrated any evidence that the emails that were sent was a violation of the Memorandum of Understanding.

22.     The plaintiff has not demonstrated that the list of individuals used by the defendants was either confidential or proprietary.

23.     The plaintiff has not offered any evidence to demonstrate that the emails were either defamatory or disparaging, consistent with ¶7 of the Memorandum of Understanding.

24.     The plaintiff offered evidence of the first version of the website, and the second version of the website.

25.     The plaintiff offered no evidence as to any of the language contained on the webpages that it considered to be either defamatory or disparaging.

26.     The plaintiff did offer some testimony concerning the inclusion of an opinion letter on the website from Caseiro and Burke regarding the plaintiff's patent on its intellectual property.

27.     The plaintiff offered no testimony relative to any defamatory or disparaging statement allegedly made by the defendants.

28.     The plaintiff offered no testimony from any material or percipient witness that any statement made by the defendants was either defamatory or disparaging towards the plaintiff.

29.     The plaintiff offered no testimony nor any evidence that the Memorandum of Understanding prohibited the defendants from making any statement relative to the settlement outside of the language contained within the memorandum of understanding.

30.     The plaintiff offered no evidence of any actual damages or of any special damages arising either out of the defendants' alleged breach, or out of any defamatory or disparaging statement that the defendants allegedly made.

31.     The language of ¶6 which states "Notwithstanding the foregoing, the Parties further agree that the Parties may disclose that this dispute has been resolved without adopting or requiring

any further relationship between and among the Parties", reflects that the Memorandum of Understanding does not impose a ban on commercial speech as to the named defendants.

32.     The plaintiff has failed to show that the alleged actions taken by the defendants, which the plaintiff alleges were unfair and deceptive, occurred primarily and substantially within the Commonwealth of Massachusetts.

33.     Beyond the language contained within Memorandum of Understanding providing that Massachusetts law would control that particular agreement, there are no other facts suggesting that any actions taken by the defendants, whether material or not, occurred within the Commonwealth of Massachusetts.

34.     On cross-examination, the evidence established that the plaintiff had no facts to demonstrate that the actions of the defendants occurred in the Commonwealth of Massachusetts.

35.     The Memorandum of Understanding at issue is silent as to the definition concerning the language "defamatory or disparaging".

36.     The plaintiff has brought no claim against these defendants for commercial disparagement.

37.     The plaintiff has offered no evidence of how any alleged statement made by the defendants was either defamatory or disparaging.

38.     The plaintiff has offered no evidence that any statement allegedly made by the defendants was either false or a misleading description of fact or representation of fact relative to the plaintiff's intellectual property; the plaintiff has offered no evidence that any alleged misrepresentation was material in that it likely influenced a purchasing decision by a third-party; the plaintiff has offered no evidence that any alleged misrepresentation or statement by the defendant actually deceived or had the tendency to deceive a substantial segment of the audience that the statements were directed to; lastly, the plaintiffs have offered no evidence of injury attributed to these alleged misrepresentations.

39.     The plaintiff has not offered any evidence that the defendant Code Genesys breached the Memorandum of Understanding.

40.     The plaintiff has not offered any evidence that Code Genesys breached the implied covenant of good faith and fair dealing.

41.     The plaintiff has not offered any evidence that Code Genesys acted in an unfair and deceptive manner consistent with G. L. c. 93A, §11.

42.     The plaintiff has not offered any evidence that Code Genesys acted in a manner that was violative of 15 U.S.C. §1117 (a), the so-called Lanham Act.

43.     The plaintiff has not offered any evidence that the defendant Spryng.io LLC breached the Memorandum of Understanding.

44.     The plaintiff has not offered any evidence that the defendant Spryng.io LLC breached the implied covenant of good faith and fair dealing.

45.     The plaintiff has not offered any evidence that the defendant Spryng.io LLC acted in an unfair and deceptive manner consistent with G. L. c. 93A, §11.

46.     The plaintiff has not offered any evidence that the defendant Spryng.io LLC acted in a manner that was violative of 15 U.S.C. §1117 (a), the so-called Lanham Act.

47.     The plaintiff has not offered any evidence that the defendant Spryng.io Anthrocomplexity breached the Memorandum of Understanding.

48.     The plaintiff has not offered any evidence that the defendant Spryng.io Anthrocomplexity breached the implied covenant of good faith and fair dealing.

49.     The plaintiff has not offered any evidence that the defendant Spryng.io Anthrocomplexity acted in an unfair and deceptive manner consistent with G. L. c. 93A, §11.

50.     The plaintiff has not offered any evidence that the defendant Spryng.io Anthrocomplexity acted in a manner that was violative of 15 U.S.C. §1117 (a), the so-called Lanham Act.

51.     The plaintiff has not offered any evidence that the defendant Spryng.io EU LTD breached the Memorandum of Understanding.

52.     The plaintiff has not offered any evidence that the defendant Spryng.io EU LTD breached the implied covenant of good faith and fair dealing.

53.     The plaintiff has not offered any evidence that the defendant Spryng.io EU LTD acted in an unfair and deceptive manner consistent with G. L. c. 93A, §11.

54.     The plaintiff has not offered any evidence that the defendant Spryng.io EU LTD acted in a manner that was violative of 15 U.S.C. §1117 (a), the so-called Lanham Act.

Proposed Conclusions of Law

Breach of Contract

1.     When a written agreement, as applied to the subject matter, "is in any respect uncertain or equivocal in meaning, all the circumstances of the parties leading up to its execution may be shown for the purpose of elucidating but not of contradicting or changing its terms." Robert

Indus., Inc. v. Spence, 362 Mass. 751, 753-754 (1973). Keating v. Stadium Mgmt. Corp., 24 Mass. App. Ct. 246, 249-250 (1987). Parrish v. Parrish, 30 Mass. App. Ct. 78, 86-87 (1991), and cases cited.

2.      "'Contract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention.' We therefore construe the contract with reference to the situation of the parties when they made it and the objects sought to be accomplished." Shea v. Bay State Gas. Co., 383 Mass. 218, 222-223 (1981) (citations omitted).

3.      The scope of a parties obligations cannot be delineated by isolating words and interpreting them as though they stood alone. Stan. v. Fordham, 420 Mass. 178, 190 (1995) (citations omitted).

4.      The rule of construction that contract ambiguities must be resolved against the drafter "'must give way to the primary and inflexible rule that . . . contracts, are to be construed so as to ascertain . . . the true intention of the parties." Shea v. Bay State Gas. Co., supra at 225.

5.      A valid settlement agreement is treated as an enforceable contract. See Vasconcellos v. Arbella Mut. Ins. Co., 67 Mass.App.Ct. 277, 282 (2006) Romain v. DeVer, 82 Mass.App.Ct. 1102, 969 N.E.2d 748 (Mass. App. 2012).

6.	"[W]hen the language of a contract is clear, it alone determines the contract's meaning." Balles, 476 Mass. at 571, 70 N.E.3d 905. Contractual language is ambiguous "if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." <u>Citation Ins. Co. v. Gomez</u>, 426 Mass. 379, 381, 688 N.E.2d 951 (1998).

7.	When the language is ambiguous, it is construed against the drafter, "if the circumstances surrounding its use ... do not indicate the intended meaning of the language." <u>Merrimack Valley Nat'l Bank v. Baird</u>, 372 Mass. 721, 724, 363 N.E.2d 688 (1977).

8.	The author of the ambiguous term is held to any reasonable interpretation attributed to that term which is relied on by the other party." <u>Merrimack Valley Nat'l Bank v. Baird</u>, 372 Mass. 721, 724, 363 N.E.2d 688 (1977).  Finally, we construe a contract as a whole, so as "to give reasonable effect to each of its provisions." J<u>.A. Sullivan Corp. v. Commonwealth</u>, 397 Mass. 789, 795, 494 N.E.2d 374 (1986). <u>James B. Nutter & Co. v. Estate of Murphy</u>, 478 Mass. 664, 88 N.E.3d 1133 (Mass. 2018).

<u>GLc. 93 a §11 Claim</u>

1.	Pursuant to G. L. c. 93A, §11, business plaintiffs may not bring an action "unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the Commonwealth." <u>Id</u>.

2.     The "primarily and substantially" requirement is not a jurisdictional predicate that must be established by the plaintiff; rather, it is an exemption on which the defendant bears the burden of proof.  G. L. c. 93A §11 ¶8.  See, <u>Bushkin Assocs., Inc v. Raytheon Co</u>., 393 Mass. 622, 637 (1985). The "primarily and substantially" defense is not an ordinary affirmative defense that must be asserted in the answer.   See, <u>Amcel Corp. v. Int'l Executive Sales Inc. </u>170 F. 3d 32, 35 (1st Cir. 1999).


3.     Pursuant to the matter of <u>Kuwaiti Danish Computer Co. v. Digital Equip.Corp</u>., 438 Mass. 459 (2003), a court must consider, when analyzing a claim brought pursuant to G. L. c. 93A §11, whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth.  <u>Kuwaiti</u>, supra at 473. The "center of gravity" approach was explained as follows: "whether the 'actions and transactions [constituting the §11 claim] occurred primarily and substantially within the Commonwealth is not a determination that can be reduced to any precise formula. Significant factors that can be identified for one case may be nonexistent in another.  Any determination necessarily will be fact intensive and unique to each case.  <u>Id</u> at 472-473.


4.     When addressing G. L. c.93A, §11 claims, a three prong balancing test may be applied that looks to "(1) where the defendant commits the unfair or deceptive act or practice; (2) where the plaintiff receives or acts on the wrongful conduct; and (3) where the plaintiff sustained losses caused by the wrongful conduct."  <u>Kuwaiti Danish Computer Co. v. Digital Equip.Corp</u>., 438 Mass. 459 (2003), citing <u>Play Time Inc. v. LDDS Metro Media Communications, Inc.</u>, 123 F. 3d 23, 33 (1st Cir. 1997).

5.      Alleged misrepresentations occurring in Massachusetts or otherwise originating in Massachusetts, but received elsewhere, are unlikely to be found to have occurred primarily and substantially in Massachusetts.  Bushkin Assocs., Inc v. Raytheon Co., 393 Mass. 622, 638 (1985).

6.      The fact that an agreement between parties provided that Massachusetts law would govern does not require a finding that the center of gravity is in Massachusetts.  Sonoran Scanners, Inc. v. PerkinElmer, Inc., 585 F 3d 535, 538 (1st Cir. 2009).

Defaming or Disparaging Issue

1.      An action for commercial disparagement is similar in many respects to an action for defamation, but there are important differences. Both torts seek to impose liability on a defendant for harm sustained by a plaintiff as a result of the publication of a false statement about the plaintiff to others. See White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 66 (2004).

2.      An action for commercial disparagement affords a remedy for harm to the economic interests of the injured party that results in pecuniary loss.  HipSaver, Inc. v. Kiel, 464 Mass. 517 (2013).

3.      In the matter of Dulgarian v. Stone, 420 Mass. 843 (1995), the  court adopted the language of the Restatement (Second) of Torts, supra at § 623A, regarding liability for commercial

disparagement: "One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to [the] interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity." Thus, in order to prevail on a claim alleging commercial disparagement, a plaintiff must prove that a defendant: (1) published a false statement to a person other than the plaintiff; (2) "of and concerning" the plaintiff's products or services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss.

Lanham Act Claim

1.      The Lanham Act prohibits false and misleading descriptions of products and services in interstate commerce. See, 15 U.S.C. §1125 (a).

2.      To prove a false advertising claim under the Lanham Act, the plaintiff must demonstrate that: (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales

or by a lessening of goodwill associated with its products.  <u>Clorox Co. P.R. v. Proctor & Gamble Commercial Co.</u>, 228 F. 3d 24, 33 (1st Cir. 2000).

3.     A plaintiff can succeed on a false advertising claim by proving either that the defendant's advertisement is literally false or implicitly false — that is, the advertisement is true or ambiguous yet misleading.  <u>Clorox</u>, Supra.

4.     Where the advertisement is implicitly false, however, "an additional burden is placed upon the plaintiff to show that the advertisement ... conveys a misleading message to the viewing public." <u>Clorox, 228 F.3d at 33</u>, footnote 8.

5.     The materiality component of a false advertising claim requires a plaintiff to prove that the defendant's deception is "likely to influence the purchasing decision."  <u>Clorox, 228 F.3d at 33</u>, footnote 8.

6.     The next element of a false advertising claim under the Lanham Act requires plaintiffs to demonstrate that the alleged misrepresentation deceived a substantial portion of the consuming public.  <u>Clorox</u>, supra at footnote 6.

7.     In order to prove causation under the Lanham Act, the aggrieved party must demonstrate that the false advertisement actually harmed its business. <u>Cashmere & Camel Hair Mfrs. v. Saks Fifth Ave.,</u>  284 F. 3d 302 (1st Cir. 2002).

<u>Publishing of Documents</u>

1.     The federal Freedom of Information Act provides a public right of access to certain information and records from the federal government. Unless protected by one of the nine exemptions contained within the Freedom of Information Act, then those documents may be disclosed.

2.     In the present matter, the plaintiff Cognitive Edge has failed to demonstrate that any documents published by any one of the defendants is entitled to any exemption under the Federal Freedom of Information Act.

<u>Closing Argument</u>

The plaintiff, Cognitive Edge, has brought this four count complaint against these four defendants in order to gain some economic and commercial superiority over these defendants, as they are competitors to the plaintiff in the field of online sense making and problem analysis. Formerly intent on merging and working in concert, the parties are now commercial rivals.

The Memorandum of Understanding between the parties does not provide anywhere within the body of the document that the defendants shall be limited to saying only that which has been approved by the plaintiff. Rather, the language of that document, read in an objective manner, demonstrates that the parties would prepare a joint statement for commercial publication, but that each party was free to disclose that the dispute has been resolved. The agreement protected the parties from commercial and economic harm that could be caused by one of the other parties,

should one of those parties make a statement about the other that was either defamatory or disparaging. If the parties were not able to make any statements whatsoever about the other, as the plaintiff would have this court believe; then there would be no need for the "defaming or disparaging" portion of the Memorandum of Understanding. In essence, both the language of paragraph six of the memorandum, as well as the logical implications of the structure and content of the memorandum of understanding, make it abundantly clear that the parties were not limiting themselves to only that statement which they both approved of in their negotiation. They were bringing to a conclusion a dispute that they had revolving around the termination of their original business plan, and they were attempting to provide a path forward so that each of the parties could do business in a commercial setting without fear of having to contend with blatant misrepresentations from a competitor.

In the instant case, that Memorandum of Understanding protects a specific set of information the plaintiff identified and wishes to maintain as "confidential," and also protects each party from "defaming or disparaging" the other. The plaintiff has brought this complaint, but seems to suggest that by publishing information online, that the defendants have breached the Memorandum of Understanding, but has failed to identify to the court whether that breach is either based upon the provision of confidential information, or based upon statements which the plaintiff considers to be defaming or disparaging. Simply put, the court is without any evidence to show that confidential information has been released by the defendants, and similarly, the court is without any information to show what statement, if any, was either defamatory or disparaging, as the plaintiff has provided no evidence of what a defamatory or a disparaging statement may be under this Memorandum of Understanding, it has not provided any evidence as to which statement

if any, that the defendants allegedly made that was defamatory or disparaging. Collaterally, the plaintiff has failed to demonstrate any of that the people to whom the defendants sent emails, and to whom they communicated, were people that the defendants should not have communicated with under any circumstances. The plaintiff has failed to show that the names and contact information of these individuals were confidential in any way, shape, or form. Indeed, their agreement explicitly defines the specific information over which the plaintiffs sought to maintain "confidentiality," and these individuals were not among the information so catalogued.

The evidence at trial proffered by the plaintiff seem to focus upon the publication on the Spryng.io website of the opinion correspondence of an intellectual property law firm. The evidence proffered by the plaintiff, arrived at solely through the testimony of Mr. Snowden, would seem to suggest that the publication of that opinion was directly disparaging or defamatory to the plaintiff. However, the plaintiff has failed to demonstrate that such a publication would be considered "defaming or disparaging" pursuant to the terms of the Memorandum of Understanding. Further, the plaintiff failed to show how that publication of that particular correspondence affected the plaintiff, in any appreciable or commercial way.

The plaintiff has offered no evidence to suggest which, if any, of the defendants should be responsible for any of the claims asserted by the plaintiff. The plaintiff is failed to demonstrate any evidence to show how this court should interpret the terms "defaming" or "disparaging" pursuant to the Memorandum of Understanding and further, the plaintiff has failed to offer evidence to show how any statement made by any one of the defendants would be sufficient to trigger that particular language within the Memorandum of Understanding.

The defendants further argue that the plaintiff has failed to show any evidence of harm, at trial, to this court. Further, the plaintiff has failed to show that whatever harm it has suffered, proof of which is completely lacking from the evidence offered at trial, would be irreparable harm consistent to merit the extension of the preliminary injunction in this matter.

The defendants respectfully request that this court find that the plaintiff, Cognitive Edge, has failed to sustain its burden of proof as to any of the four separate claims asserted in its amended complaint, and that judgment should enter in this matter consistent with that lack of evidence.

Respectfully Submitted,
Counsel for the Defendants,

/s/ Christopher A. Perruzzi
Christopher A. Perruzzi BBO#558 273
Attorney for the Defendant
Perruzzi Law Office, LLC
1266 Furnace Brook Pkwy., Suite 400
Quincy, MA 02169
(617) 586-0883
caperruzzi@perruzzilaw.com

dated: August 24, 2020

CERTIFICATE OF SERVICE


      I hereby certify that on August 24, 2020 a copy of the foregoing was served electronically upon all counsel of record by the United States District Court for the District of Massachusetts electronic document filing system.

                      /s/ Christopher A. Perruzzi
                      Christopher A. Perruzzi