UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COGNITIVE EDGE PTE LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 1:19-cv-12123-IT |
| CODE GENESYS, LLC, SPRYNG.IO, LLC, SPRYNG.IO ANTHROCOMPLEXITY, LLC, and SPRYNG.IO EU LTD., | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**MEMORNADUM IN SUPPORT OF DEFENDANTS' RULE 59 MOTION TO AMEND
AND DIRECT THE ENTRY OF A NEW JUDGMENT OR TO ORDER A NEW TRIAL**

**INTRODUCTION**

This case is not about the enforcement of a settlement agreement. This case is Plaintiff Cognitive Edge PTE Ltd.'s (Cognitive Edge) and its founder David Snowden's attempt to put a competitor—Defendants Code Genesys, LLC, Spryng.io, LLC, Spryng.io Anthrocomplexity, LLC, and Spryng.io EU Ltd. (collectively Defendants)—out of business. This Court's judgment aids Plaintiff and Mr. Snowden in that quest, even though the Court ruled that Plaintiff *failed to prove* violations of Chapter 93A and the Lanham Act, and even though Plaintiff *failed to prove any* legally cognizable damages on its claims for breach of contract and breach of the covenant of good faith and fair dealing. The Court's ruling that attorneys' fees incurred in enforcing a settlement agreement—which contained a prevailing party attorneys' fee provision—could be awarded as "damages" for breach of contract was erroneous as a matter of law. Plaintiff's contract and covenant of good faith and fair dealing claims failed because Plaintiff failed to prove harm caused by any alleged "breach."

Yet, the Court awarded $133,792.92 in "damages and fees," without even attempting to

segregate what portion of the award was "damages" and what portion was "fees," and without

any reduction for the time that Plaintiff's counsel spent on the issues on which Plaintiff

indisputably did *not* prevail (e.g., the Chapter 93A and Lanham Act claims, the claim for

permanent injunctive and declaratory relief, and the sanctions motion). Further, the Court's

conclusion that a breach occurred was erroneous as a matter of law based on the plain language

of the Settlement Agreement.

For these reasons, the Court should direct the entry of a new judgment in Defendants'

favor and permit Defendants to file a motion seeking its attorneys' fees as the prevailing party, or

in the alternative, amend the findings of fact and conclusions of law by reducing the attorneys'

fees award to account for the time that Plaintiff's counsel spent on the claims for which Plaintiff

is *not* the prevailing party.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]**

**I.   The Parties' Prior Relationship**

According to this Court's Findings of Fact and Conclusions of Law, Plaintiff Cognitive

Edge is a "software and methods company" that sells a product called SenseMaker. Doc. No. 84

at 1-2. Cognitive Edge holds patents on that product obtained by one of its founders and Chief

Scientific Officer, David Snowden. *Id.* at 2. Defendant Code Genesys is a software and

consulting company and the other Defendants are holding companies for Code Genesys's

investors." *Id.*

In 2018, Cognitive Edge and Code Genesys entered an agreement to facilitate a potential

combination of the two companies and to develop a prototype software platform called

"MassSense." *Id.* Cognitive Edge made its SenseMaker source code and other proprietary

---

[1] Defendants summarize the Court's Findings of Fact and Conclusions of Law, some of which Defendants dispute.

2

information available to Code Genesys. *Id*.

Cognitive Edge and Code Genesys did not combine, but the MassSense source code became embedded in the Spryng.io software platform operated by Defendants.[2] *Id*. Some prospective Sprying.io customers expressed concerns to Defendants' CEO Ajay Reddy that Defendants did not have rights to use or market Spryng.io and that users could be subject to liability for doing so. *Id*. These concerns, though they were unfounded, created enough uncertainty in the marketplace that Code Genesys deemed it necessary to commence litigation to establish its rights to the MassSense source code.

## II.     The Prior Lawsuit

Code Genesys sued Cognitive Edge in 2018 asserting a number of claims, including a claim for a declaration that Code Genesys's Spryng.io software is wholly the property of Code Genesys, does not incorporate any proprietary trade secrets of Cognitive Edge, and is not subject to any co-venture rights, co-ownership, or cross-licensing rights with Cognitive Edge. *Id.* at 3.[3] Cognitive Edge counterclaimed, including for misappropriation of trade secrets. *Id.* On the morning of the day trial was scheduled to begin, the Court heard an emergency motion by Code Genesys to amend the complaint to add a claim that Cognitive Edge breached a settlement agreement reached the night before. *Id.* at 3-4. After taking limited testimonial and documentary evidence on that issue, the Court adjourned the proceedings without making any findings, to permit the parties to discuss settlement. *Id*. at 4. After the recess, counsel reported that the case had settled and filed a Joint Stipulation to that effect. *Id.* at 4.

---

[2] The MassSense source code was developed by Code Genesys. *See infra* note 3.

[3] Code Genesys was prepared to prove at trial that it—not Cognitive Edge—had developed the MassSense source code and devoted significant resources to that effort and toward the new venture more generally, including about $450,000, along with executive, legal, development, and marketing personnel, among other things. Code Genesys only agreed to release its damages claims against Cognitive Edge for the significant expenditures that Code Genesys made as part of the settlement described below.

### III.    The Settlement Agreement

Cognitive Edge, Code Genesys, and the other Defendants entered a fully integrated Memorandum of Understanding Concerning Litigation Settlement, Licensing and Confidentiality (Settlement Agreement) governed by Massachusetts law. *Id.* at 4, 6 & Tr. Ex. 1 ¶ 9. The Court found that no portion of the Settlement Agreement "confers full ownership rights of the Spryng.io Platform" on any party. *Id.*

The Settlement Agreement states that "Cognitive Edge Pvt. Ltd. contends it has provided Code Genesys with Confidential Information . . . that it wishes to protect. Cognitive Edge contends it owns the rights to the Confidential Information it has provided Code Genesys during the parties' relationship . . . ." *Id.* at 5 & Tr. Ex. 1 ¶ 4. Subject to certain carveouts, the Settlement Agreement defines "Confidential Information" as: (1) MassSense Source Code; (2) SenseMaker Source Code; (3) Signifier Layers Document; and (4) MassSense Overview. *Id.* & Tr. Ex. 1 ¶ 5(a), Attach. A.

Paragraph 5(c) of the Settlement Agreement addresses the "Permitted Use" of the "Confidential Information" as follows:

> Recipient acknowledges and agrees it shall treat the Confidential Information on a confidential basis. Cognitive Edge acknowledges Code Genesys disputes whether such information is proprietary and confidential, but will nonetheless treat it as such with regard to any and all third parties. To the extent Cognitive Edge believes Code Genesys has used or relied upon this Confidential Information in developing the Spryng.io platform or for any other purpose, Cognitive Edge agrees Code Genesys is free to use and incorporate same in its services and products from now to the end of time for the sole purpose of commercialization of the Spryng.io product. Nothing contained herein alters or changes Code Genesys' agreement to not disclose any confidential information of Cognitive Edge to any other party.

*Id.* & Tr. Ex. 1 ¶ 5(c).

Paragraph 6 of the Settlement Agreement states that it "is Confidential Information" and each party agreed to keep confidential and not to disclose "to any person other than its financial,

tax or legal advisors, any of the terms and conditions of" the Settlement Agreement or "the

substance of any discussions preceding" the Settlement Agreement, "except as may be required

by applicable law or as otherwise agreed to, in advance and in writing, by all Parties." *Id.* at 6 &

Tr. Ex. 1 ¶ 6. However, the parties agreed that they "may disclose that this dispute has been

resolved without adopting or requiring any further relationship between and among the Parties."

*Id.* The parties also agreed that they "shall jointly and publicly disclose: 'the parties have reached

an agreement that resolves the parties' lawsuit.'" *Id.* & Tr. Ex. 1 ¶ 7.

> Paragraph 8 of the Settlement Agreement contains a provision that states:
>
> The Parties undertake, on behalf of themselves and any person acting by, through,
> under, or in concert with them, to refrain from *defaming or disparaging* any of the
> Parties, their products, services, finances, financial condition, capabilities, or
> other aspect of their businesses, or any former or existing employees, managers,
> directors, officers or agents of, or contracting parties with any of the Parties . . . in
> any medium and by any method to any person or entity without limitation in
> time."

*Id.* at 6 & Tr. Ex. 1 ¶ 8 (emphasis added).

Finally, the Settlement Agreement provides that it "shall be admissible in any proceeding

to enforce the terms thereof, if necessary, and the prevailing party in any such proceeding shall

be entitled to recover costs, including reasonable attorneys' fees, incurred thereby." *Id.* at 6 & Tr.

Ex. 1 ¶ 10.

## IV.    Code Genesys's Marketing Email and Linked Webpages

After the settlement was reached, Defendants created informational web pages on the

Spryng.io website to address the customer concerns noted above. *Id.* at 7. The header on each

page stated that the materials "are published to provide complete transparency into the history

and final outcome of legal proceedings that confirmed Spryng.io's full ownership of and rights

over the technologies and other capabilities embodied in the Spryng.io Platform." *Id.* at 7 & Tr.

Ex. 7. The "Introduction" page of the website say that Spryng was moving forward "with

absolute clarity and finality on our complete ownership of and rights over *all* the technologies

embodied in the Spryng.io platform." *Id.* The Lawsuit page of the website stated that the "trial . .

. finally commenced and concluded on October 7, 2019." *Id.* at 7-8 & Ex. 7. The "U.S. Patents"

page stated that "[t]here are reasonable grounds to suggest the Cognitive Edge patents are invalid

and unenforceable due to the existence of relevant non-patent literature, including such non-

patent literature the inventors likely had knowledge of but failed to provide to the examiner

responsible for examining the patent application." *Id.* The web page then linked to a legal

opinion letter (Opinion Letter) regarding "Noninfringement, Potential Unenforceability and

Potential Invalidity" of the relevant Cognitive Edge patents. *Id.* The final web page, labeled

"Outcome," stated that "[o]n the morning of Monday, October 7, 2019, Judge Indira Talwani

presided over a very short bench trial . . . on this matter. After taking limited evidence, she

encouraged the parties to accept a recess and focus their efforts on finalizing the language for an

agreement that appeared to have been reached in principle at the end of the prior week." *Id.* at 8-

9 & Ex. 7. Defendants sent a marketing email "blast" to more than 170 people with a link to

these web pages and a link to the Spryng.io website. *Id.* at 9.

Cognitive Edge's legal counsel contacted Code Genesys, after which Code Genesys

revised the information on Spryng.io's website. *Id.* at 9 & Tr. Ex. 8. The changes included the

following:

- The language stating "legal proceedings that confirmed Spryng.io's full ownership of and rights over the technologies and other capabilities embedded in the Spryng.io Platform" (Tr. Ex. 7 at 1) was replaced with "legal proceedings that affirm Spryng.io's full rights to the Spryng.io Platform" (Tr. Ex. 8 at 1);

- The statement that Code Genesys was moving forward with "absolute clarity and finality on our complete ownership of and rights over *all* the technologies embodied in the Spryng.io platform" (Tr. Ex. 7 at 1) was replaced with "absolute clarity and finality on our full rights to the Spryng.io platform" (Tr. Ex. 8 at 1); and

- The statement that the "Trial finally commenced and concluded on October 7, 2019" (Tr.

Ex. 7 at 3) was revised to reference on that date "a preliminary hearing before Judge Indira Talwani in which she took limited evidence" (Tr. Ex. 8 at 3).[4]

Despite these changes, Cognitive Edge continued to object to the webpages as "defamatory," Tr. Ex. 2, and only eight days after the Settlement Agreement was signed, Cognitive Edge brought this lawsuit. Doc. No. 84 at 10. The Court entered a temporary restraining order requiring Defendants to "remove information from their website or websites referring to Plaintiff, its products, property, employees or business, within twenty-four (24) hours of receipt of notice of this Order." Doc. No. 15 at 2. That order was incorporated into a preliminary injunction later issued by the Court, which also ordered Defendants to keep the terms of the Settlement Agreement confidential (except as otherwise agreed), and ordered Defendants to refrain from defaming or disparaging Plaintiff, its products, services, finances, financial condition, capabilities, or other aspects of its business, or any former or existing employees, managers, directors, officers, or agents of or parties contracting with Plaintiff in any medium and by any method to any person or entity through the pendency of this action. Doc. No. 31.

## V. Cognitive Edge's Claimed Harm – Attorneys' Fees Only

Plaintiff claims that "as a result of Defendants' website" Plaintiff lost a significant business relationship with a woman named Glenda Eoyang, but the Court correctly found "the evidence insufficient to establish that Defendants' actions impacted Eoyang's relationship with Cognitive Edge." Doc. No. 84 at 11-12.

Plaintiff also claimed in vague and general terms that "Defendants' blast email resulted in 'market confusion,' the loss of business relationships, time spent on the dispute, and legal fees."

---

[4] The "U.S. Patents" page was not revised and continued to include the link to the Opinion Letter. Tr. Ex. 8 at 5-19. No "corrective disclosure" was sent to the recipients of the email blast. Doc. No. 84 at 10.

*Id.* at 12 (citing Pl.'s Posttrial Mem.). But Plaintiff acknowledged at trial that ***"only the legal fees could be quantified."*** *Id*. (relying on testimony of Plaintiff's CSO David Snowden) (emphasis added). This Court found that Plaintiff proved that it incurred legal fees of $133,792.92 "in this matter through June 30, 2020." *Id.*

## VI.    Conclusions of Law

### A.  Count I – Breach of Contract (Settlement Agreement)

The Court concluded that there was no dispute that the Settlement Agreement was a valid and binding contract, leaving only the questions of breach and damages. The Court first construed the terms "defaming or disparaging" in the Settlement Agreement, looking to the "plain meaning" of those terms. *Id*. at 14-16. The Court concluded that the "plain meaning" of "defaming or disparaging" "includes both 'publication of a false statement' about the protected party to others," and "'depreciat[ion] by indirect means (such as 'invidious comparison,' 'speak[ing] slightingly about,' or 'lower[ing] in rank or reputation.'" *Id*. at 16 (quoting Merriam-Webster definition of "disparage").

Based on those definitions, the Court concluded that the original version of Defendants' website "falsely implied that the matter was adjudicated in their favor on the merits when, in fact, the matter was resolved by the Settlement Agreement to address forward-looking issues only and without any resolution of the allegations of prior wrongdoing." *Id*. at 17. The Court also concluded that the statement on the original version of Defendants' website that the prior legal proceedings confirmed Spryng.io's full ownership of and rights over the technologies was false and disparaging. *Id.* at 17-18. The Court concluded, however, that the revised version did not violate the Settlement Agreement. *Id.* at 18 n.9. The Court also concluded that the suggestion on the original and revised versions of the webpage that Cognitive Edge's patents may be found

invalid "is harmful to Cognitive Edge's product's marketability," and the suggestion that
Snowden "likely had knowledge" of relevant information that he "failed" to disclose implies that
he acted improperly in obtaining the patents, which the Court concluded "disparages Snowden."
*Id*. at 18-19. Additionally, the Court concluded that Defendants' publication to third parties of
the patent opinion letter was defamatory or disparaging. *Id*. at 19-20.

        The Court then addressed Plaintiff's alleged harm. The Court first acknowledged that,
apart from attorneys' fees, "Plaintiff has made no claim that [its alleged] harm [including
'market confusion' and harm to goodwill and reputation] is quantifiable in damages." *Id.* at 20;
*see also id.* at 27 ("Plaintiff has not demonstrated that Defendants' actions have caused any loss
from unfair competition, or any loss of money or property at all, other than attorneys' fees"); *id.*
at 28 ("Plaintiff has not made a substantial showing that it has been or is likely to be injured by
[Defendants'] statements"). The Court also noted Defendants' position that, as a result,
Plaintiff's contract claims fails because Plaintiff "failed to establish damages from the breach."
*Id.* at 20. Nevertheless, the Court concluded that "Plaintiff's legal fees incurred in contacting
Defendants' counsel and having the original website modified and in obtaining the temporary
restraining order and preliminary injunction were reasonable post-breach expenditures made in
mitigating the breach," which the Court ruled was "sufficient to sustain the breach of contract
claim." *Id.* at 21; *see also id.* at 33 (awarding as damages "Plaintiff's legal fees incurred in
contacting Defendants' counsel and having the original website modified and in obtaining the
temporary restraining order and preliminary injunction" because those fees "were reasonable
post-breach expenditures made in mitigating the breach"). However, the Court did not quantify
the amount of damages awarded for those discrete tasks performed by Plaintiff's counsel. *See id.*
at 35 (awarding "Plaintiff $133,792.92 in *damages and fees*") (emphasis added).

### B.  Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing

The Court concluded that, based on the same conduct that the Court relied on for the

contract claim, the Defendants breached the covenant of good faith and fair dealing. *Id.* at 22-24.

The Court did not address damages on this claim. *See id.*[5]

### C.  Attorneys' Fees

On the basis of the breach of contract claim, for which Plaintiff failed completely to

prove any harm other than attorneys' fees, the Court deemed Plaintiff the "prevailing party"

under the Settlement Agreement and awarded Plaintiff $133,792.92 in legal fees "incurred in this

matter through June 30, 2020." *Id.* at 33-35; *see also* Doc. No. 86 (judgment). The Court made

no attempt to segregate time spent on the contract claim and the other claims and issues on which

Plaintiff indisputably did *not* prevail.[6]

### ARGUMENT

### I.    Standard of Review on Rule 59 Motion

"The court may . . . grant a new trial on all or some of the issues . . . after a nonjury trial,

for any reason for which a rehearing has heretofore been granted in a suit in equity in federal

court." Fed. R. Civ. P. 59(a)(1)(B). "After a nonjury trial, the court may, on motion for a new

trial, open the judgment if one has been entered, take additional testimony, amend findings of

fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R.

---

[5] The Court concluded that Plaintiff's claims under Mass. Gen. Laws 93A (Count III) and the Lanham Act (Count IV) failed and that Plaintiff could not hold Defendants' officers and agents individually liable where they were never named in the lawsuit. *Id.* at 24-30.

[6] Plaintiff also sought a declaration that Defendants could not enforce the confidentiality provisions in the Settlement Agreement, but the Court ruled that neither party could do so since the Settlement Agreement became a public document during the litigation. *Id.* at 30-31. The Court also denied Plaintiff's request for a permanent injunction ordering specific performance of the Settlement Agreement, making the preliminary injunction permanent, and issuing a retraction of the statements found to be false and disparaging, on the grounds that the standard for a permanent injunction was not met and restricting speech and ordering a retraction would be an unconstitutional prior restraint on speech. *Id.* at 32. After the judgment in this case, Defendants' counsel reached out to Plaintiff's counsel to put out a joint statement concerning the lawsuit. Plaintiff refused even to engage in that discussion.

Civ. P. 59(a)(2); *see also* Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2804 (3d ed.). "The court may also grant a partial new trial on a limited issue, such as damages." *Gilroy v. Ameriquest Mortg. Co.*, No. CIV 07-CV-074-JD, 2009 WL 2169858, at *1 (D.N.H. July 21, 2009) (citing *Rice v. Cmty Health Ass'n*, 203 F.3d 283, 290 (4th Cir.2000)). The district court can vacate a judgment and enter judgment in the moving party's favor where, as here, "the verdict is against the law, against the weight of the credible evidence, [and] tantamount to a miscarriage of justice." *Crowe v. Marchand*, 506 F.3d 13, 19 (1st Cir. 2007).

## II.   Judgment Should Enter for Defendants Because Plaintiff is Not the "Prevailing Party" Where Plaintiff Failed to Prove *Any* Legally Cognizable Damages

Defendants are entitled to judgment in their favor, and an award of attorneys' fees, because Plaintiff failed entirely to prove *any* legal cognizable damages on its breach of contract and breach of the covenant of good faith and fair dealing claims.[7] The *only* purported damages awarded to Plaintiff were attorneys' fees, which are not legally cognizable as damages and which the Court never quantified in any event.

"To demonstrate a breach of contract, 'the plaintiff must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach.' " *Young v. Wells Fargo Bank, N.A.*, 828 F.3d 26, 32 (1st Cir. 2016) (affirming grant of summary judgment on breach of contract claim where plaintiff failed to prove damages); *see also Beaupre v. Seacoast Sales, Inc.*, No. CV 18-12080-NMG, 2020 WL 7386311, at *5 (D. Mass. Dec. 16, 2020) (allowing summary judgment on breach of contract claim where there was "no evidence in the record to indicate that [plaintiff] incurred damages as a result of defendants' alleged breach" because "damages are an essential element of a breach of

---

[7] Defendants argued in their pre- and post-trial briefing that Plaintiff failed to prove damages. *See* Doc. No. 73 at 16; Doc. No. 77 at 10, 24.

contract claim"); *Valle v. Powertech Indus. Co., Ltd.*, 381 F. Supp. 3d 151, 160 (D. Mass. 2019) (breach of contract claim requires that "plaintiff sustained injury as a result of the defendant's breach"); *Davis v. Dawson, Inc.*, 15 F. Supp. 2d 64, 133 (D. Mass. 1998) (awarding summary judgment on breach of contract claim for failure to prove damages because "[d]amages constitute an essential element to [a] breach of contract claim"); *Williams v. Astra USA, Inc.*, 68 F. Supp. 2d 29, 38 (D. Mass. 1999) (dismissing breach of covenant of good faith and fair dealing claim "for failure to allege compensable damages"); *Ayash v. Dana-Farber Cancer Inst.*, 822 N.E.2d 667, 685 (Mass. 2005) (vacating judgment "because the plaintiff has offered no evidence that she suffered compensable loss as a result of the breach" of the covenant of good faith and fair dealing).

The *only* purported damages awarded here—attorneys' fees—are not legally cognizable damages for a breach of contract claim where attorneys' fees are *not* a substantive element of damages but are only a supplemental remedy available to a party who prevails. The "American Rule" for awarding attorneys' fees is that they are "not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967).

Critically, "courts have differentiated between claims for attorney's fees based on 'prevailing party' contractual provisions and claims for attorney's fees based on other types of contractual provisions." *Rockland Tr. Co. v. Computer Associated Int'l, Inc.*, No. 95-11683-DPW, 2008 WL 3824791, at *5-6 (D. Mass. Aug. 1, 2008) (collecting cases). "A line of cases has treated attorney's fees as a collateral issue when a party seeks them pursuant to a prevailing party contract provision." *Id.*[8] "By contrast, when a party seeks attorney's fees stemming from a

---

[8] *See, e.g.*, *Rissman v. Rissman*, 229 F.3d 586, 587–88 (7th Cir.2000); *Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268, 1269–71 (11th Cir.2000) (per curiam); *Wiley v. Mitchell*, 106 Fed. Appx. 517, 523 (8th Cir.2004)

breach of contract, courts have found the issue of attorney's fees to be an element of damages." *Id.*[9] "[T]he distinction between a claim for attorney's fees based on a prevailing party provision and attorney's fees based on a breach of contract is said to turn on the condition precedent to recovery." *Id.* "When a party seeks attorney's fees pursuant to a prevailing party provision, the condition precedent to recovery is the successful litigation of a claim." *Id.* "Conversely, when a party seeks attorney's fees as a result of a breach the condition precedent to recovering legal costs is a breach of contract by [a party]." *Id.*

Prevailing party attorneys' fee provisions, like the one here, "are not really an element of damages flowing from breach but rather an additional right of recovery incident to that breach." *Companion Health Servs., Inc. v. Kurtz*, 675 F.3d 75, 88 (1st Cir. 2012) (quoting *Interstate Brands Corp. v. Lily Transp. Corp.*, 256 F.Supp.2d 58, 63 & n.3 (D. Mass. 2003)). Only where—unlike here—a party breaches an obligation to pay attorneys' fees *independent of success in litigation* that attorneys' fees can be recovered as damages. *See id.* (attorneys' fees could be recoverable as damages for breach of insurance contract where insurer breaches its duty

---

(per curiam); *Formulatrix, Inc. v. Rigaku Automation, Inc.*, 344 F. Supp. 3d 410, 432 (D. Mass. 2018); *Doucot v. IDS Scheer, Inc.*, 734 F. Supp. 2d 172, 191 (D. Mass. 2010) ("Where, as here, a 'prevailing party' provision exists, courts treat the request for fees as collateral, since 'the amount of attorney's fees does not become fully liquidated until conclusion of trial on the merits.'").

[9] *Rubenstein v. Royal Ins. Co. of Am.*, 708 N.E.2d 639 (Mass. 1999) (insured who establishes insurer's duty to defend entitled to attorney's fees as damages); *Pride Hyundai, Inc. v. Chrysler Fin. Co., LLC*, 355 F. Supp. 2d 600, 603–04 (D.R.I. 2005) (no prevailing party provision, but contract stated that Pride "agrees that it shall pay all expenses and reimburse [CFC] for any expenditures, including reasonable attorneys' fees and legal expenses, in connection with [CFC]'s exercise of any of its rights and remedies under this Agreement"); *Carolina Power & Light Co. v. Dynegy Mktg. & Trade*, 415 F.3d 354, 359 (4th Cir. 2005), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers*, 571 U.S. 177 (2014) (no prevailing party clause, but contract provided that legal costs were recoverable as remedy for buyer's failure "to accept all or any part of the quantity of coal to be delivered under [the contract]," which section of the contract provided that "[t]he remedies set forth in this Section . . . shall be a Party's exclusive monetary damages for the other Party's" breach); *Rockland Tr. Co.*, 2008 WL 3824791, at *5-6 (no prevailing party provision, but contract provided that "[a]ny invoice which is unpaid by [Rockland Trust] when due shall be subject to an interest charge of 2% per month or part thereof plus such late payment charge as CA may reasonably require to cover its additional costs of administration and collection."); *Lynch v. Sease*, No. CIV.A. 6:03-479-DCR, 2006 WL 1206472, at *3 (E.D. Ky. May 2, 2006) (no prevailing party provision, but contract stated that "[i]n the event of [a] default, the [non-breaching party] shall become entitled to all expenses of collection, including, but not limited to, reasonable attorneys' fees, as well as the sum certain of $1,5000,000.00.").

to defend). In other words, it is only "where the underlying breach of contract consisted of a failure to reimburse attorneys' fees" that attorneys' fees can be awarded as damages. *Interstate Brands Corp.*, 256 F. Supp. 2d at 63.[10]

The attorneys' fees provision here is a prevailing party provision, the condition precedent to which is the successful litigation of a claim. The Settlement Agreement states that "the prevailing party" "in any proceeding to enforce the terms" of the Settlement Agreement "shall be entitled to recover costs, including reasonable attorneys' fees." Tr. Ex. 1 ¶ 10. There is no automatic right to attorneys' fees as damages for a breach of the Settlement Agreement. Plaintiff had to prevail first. It did not.

To be the prevailing party on its breach of contract and covenant of good faith and fair dealing claims, Plaintiff had to prove *all* of the elements of those claims—*including compensable damages*. Plaintiff failed to do that. Therefore, Plaintiff's contract and covenant of good faith and fair dealing claims fail and judgment should enter for Defendants along with an award of attorneys' fees and costs for Defendants as the prevailing party.[11]

## III.   Plaintiff Failed as a Matter of Law to Prove a Breach of the Non-Disparagement Provision or Any Related Covenant of Good Faith and Fair Dealing

"Under Massachusetts law, contract interpretation is a question of law for the court unless the contract is ambiguous." *Nicolaci v. Anapol*, 387 F.3d 21, 26 (1st Cir. 2004). "When contract language is unambiguous, it must be construed according to its plain meaning." *Balles v. Babcock Power Inc.*, 70 N.E.3d 905, 911 (Mass. 2017).

---

[10]*Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 827 (Mass. 1991), is not to the contrary. It addressed expenditures to mitigate damages. It did not address the unique issues raised when a party seeks to recover attorneys' fees for a breach of contract claim.

[11] Not only do these claims fail due to failure to prove damages, but the Court also awarded no additional relief whether in the form of a permanent injunction or declaration. Plaintiff therefore is indisputably *not* the "prevailing party." *See, e.g.*, *Bardon Trimount, Inc. v. Guyott*, 49 Mass. App. Ct. 764, 779 (2000) ("a plaintiff does not 'prevail' without obtaining relief").

The Settlement Agreement provides that the parties "undertake, on behalf of themselves and any person acting by, through, under, or in concert with them, to refrain from *defaming or disparaging* any of the Parties, their produces, services, finances, financial condition, capabilities, or other aspect of their businesses, or any former or existing employees, managers, directors, officers, or agents of, or contracting parties with any of the Parties . . . in any medium and by any method to any person or entity without limitation in time." Tr. Ex. 1 ¶ 8 (emphasis added).

The terms "defaming" and "disparaging" are not defined in the Settlement Agreement, but their plain meaning is clear in this context: they require proof of the tort of defamation or commercial disparagement. *See* Doc. No. 73 at 10-11, 15-16; Doc. No. 77 at 7, 9-14, 18-19, 21-23. Indeed, the First Circuit has held in an insurance coverage dispute that language similar to the language here "suggests an intent to limit coverage to the torts of libel, slander, and commercial disparagement." *Great Am. Ins. Co. v. Riso, Inc.*, 479 F.3d 158, 162 (1st Cir. 2007).[12]

"A defamation action, which encompasses libel and slander, affords a remedy for damage to the reputation of the injured party." *HipSaver, Inc. v. Kiel*, 984 N.E.2d 755, 762 (Mass. 2013). "To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss [such as statements that harm a plaintiff's professional or business reputation]." *White v. Blue Cross & Blue Shield of Massachusetts, Inc.*, 809 N.E.2d 1034, 1036 & n.10 (2004). "By comparison, an action for commercial disparagement affords a remedy for harm to the

---

[12] The policy in *Riso* covered "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." *Id.* at 160. That language is very similar to the non-disparagement provision at issue here.

15

economic interests of the injured party that results in pecuniary loss." *HipSaver*, 947 N.E.2d at

762. "[T]o prevail on a claim alleging commercial disparagement, a plaintiff must prove that a

defendant: (1) published a false statement to a person other than the plaintiff; (2) of and

concerning the plaintiff's products or services; (3) with knowledge of the statement's falsity or

with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests

was intended or foreseeable; and (5) such publication resulted in special damages in the form of

pecuniary loss." *Id.* at 763. "[A] failure of proof as to even one element would be sufficient to

defeat a claim for commercial disparagement." *Id.*[13]

Plaintiff failed to prove a breach of the Settlement Agreement here because Plaintiff

failed to prove either defamation or disparagement. Plaintiff failed to prove that each statement it

claimed was defamatory or disparaging was a false statement of fact. Indeed, Plaintiff relied in

part on a legal "Opinion Letter" as a basis for this claim. But "[s]tatements of opinion are

constitutionally protected and thus are not actionable." *See Hi-Tech Pharm., Inc. v. Cohen*, 277

F. Supp. 3d 236, 244 (D. Mass. 2016), *as amended* (Oct. 28, 2016) (quoting *Friedman v. Boston*

*Broadcasters, Inc.*, 402 Mass. 376, 379, 522 N.E.2d 959 (1988)). Plaintiff also failed to prove

any degree of fault. In fact, Defendants made the statements at issue solely in an attempt to

rehabilitate their *own* reputation, which was harmed immensely by Cognitive Edge's false

statements and implication that Code Genesys had somehow "stolen" Cognitive Edge's source

code. *See, e.g.*, Doc. No. 78 at 60, 69-72, 83-84, 92-103, 115-18, 121, 126-29, 131-32, 145.

Plaintiff also failed to prove actual harm to its reputation, pecuniary harm, or actual damages

caused by any of the statements at issue.

---

[13] This construction does not render "meaningless" the term "disparaging," as the Court found (Doc. No. 84 at 15), because defamation and disparagement are distinct torts with distinct elements required to prove a claim. As the Court acknowledged, the Settlement Agreement was drafted by attorneys advising each side, Doc. No. 84 at 16 n.8, who understood that these distinct terms have distinct legal meanings and requirements.

In short, Plaintiff failed to prove defamation or disparagement and, therefore, failed to prove a breach of the Settlement Agreement. As such, the judgment should be vacated and judgment entered in Defendants' favor with leave to move for an award of attorneys' fees as the prevailing party.

## IV.    The Award of Attorneys' Fees to Plaintiff as "Prevailing Party" Must Be Reduced in Light of the Results Obtained

"Under Massachusetts law, when a fee provision calls for 'reasonable' fees, a court should consider, inter alia, the ability and reputation of the attorney, the time spent, the prices usually charged, the amount of money or property affected by the controversy and the *results secured*." *RFF Family P'ship, LP v. Link Dev., LLC*, 962 F. Supp. 2d 340, 343 (D. Mass. 2013) (emphasis added).

If the Court concludes that Plaintiff somehow prevailed on its breach of contract claim, then the award of attorneys' fees to Plaintiff as the "prevailing party" under the Settlement Agreement must be reduced significantly to account for Plaintiff's minimal success and to discount the time spent by Plaintiff's counsel on the host of issues on which Plaintiff indisputably did *not* prevail: namely, the Chapter 93A and Lanham Act claims, the claim for permanent injunctive and declaratory relief, and the sanctions motion. *See, e.g.*, *Lewis v. Sec'y of Health & Human Servs.*, 370 F. Supp. 3d 267, 274 (D. Mass. 2019) (reducing attorneys' fee request by about 50% to discount for work on claim on which plaintiff did not prevail); *RFF Family P'ship, LP*, 962 F. Supp. 2d at 343 (reducing attorney fee request by 25% to account for claims on which plaintiff did not prevail); *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 430, 837 N.E.2d 1121, 1138 (2005) (affirming reduction of attorneys' fee request by 45% to discount for work on claims on which plaintiff did not prevail).

If the Court does not vacate the judgment for Plaintiff, the Court should reduce the

attorneys' fees award to account for the time that Plaintiff's counsel spent on the claims for which Plaintiff is *not* the prevailing party.

## CONCLUSION

Defendants Code Genesys, LLC, Spryng.io, LLC, Spryng.io Anthrocomplexity, LLC, and Spryng.io EU Ltd. respectfully request that the Court direct the entry of a new judgment in Defendants' favor and permit Defendants to file a motion seeking its attorneys' fees as the prevailing party, or in the alternative, amend the findings of fact and conclusions of law by reducing the attorneys' fees award to account for the time that Plaintiff's counsel spent on the claims for which Plaintiff is *not* the prevailing party.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Defendants Code Genesys, LLC, Spryng.io, LLC, Spryng.io Anthrocomplexity, LLC, and Spryng.io EU Ltd. respectfully request oral argument on this Motion because they believe that oral argument will assist the Court in ruling on this Motion.

18

Respectfully submitted,

CODE GENESYS, LLC, SPRYNG.IO, LLC,
SPRYNG.IO ANTHROCOMPLEXITY, LLC,
and SPRYNG.IO EU LTD.,

By their attorneys,

*/s/ Joseph M. Cacace*
Nicholas B. Carter (BBO# 561147)
Joseph M. Cacace (BBO# 672298)
TODD & WELD LLP
One Federal Street
Boston, MA 02110
(617) 720-2626
ncarter@toddweld.com
jcacace@toddweld.com

*/s/ Christopher A. Perruzzi*
Christopher A. Perruzzi BBO#558 273
Perruzzi Law Office, LLC
1266 Furnace Brook Pkwy., Suite 400
Quincy, MA 02169
(617) 586-0883
caperruzzi@perruzzilaw.com

Date:  February 16, 2021

## LOCAL RULE 7.1(a)(2) CERTIFICATION

Undersigned counsel certifies that he conferred in good faith with opposing counsel about this motion and counsel were unable to resolve or narrow the issue.

Date:   February 16, 2021                         */s/ Joseph M. Cacace*
                                                                   Joseph M. Cacace

## <u>CERTIFICATE OF SERVICE</u>

      I, Joseph M. Cacace, hereby certify that the foregoing documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Date:  February 16, 2021                */s/ Joseph M. Cacace*
                                              Joseph M. Cacace